UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 4:19-cr-00303-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| CODY MOORE, | |
| Defendant. | |

## INTRODUCTION

Defendant Cody Moore (Moore), who is incarcerated in the Federal Bureau of Prisons (BOP) facility in Duluth, Minnesota, has filed a Motion for Reduction of Sentence on compassionate release grounds, with exhibits and a supporting Reply. Dkts. 186, 186-1. The government opposes the motion. Dkt. 190. For the reasons stated below, the Court will deny the motion.

## REQUEST FOR APPOINTMENT OF COUNSEL

After Moore filed his motion for compassionate release, he requested appointment of counsel. Dkt. 189. There is no specific reason in the request, and the Court finds that appointing counsel is not required because the facts supporting the request are straightforward and the legal standard is not difficult to understand. Therefore, this request will be denied.

MEMORANDUM DECISION AND ORDER - 1

**BACKGROUND**

After a Drug Enforcement Administration (DEA) and local law enforcement investigation beginning in 2018, Moore was charged with and pleaded guilty to three counts in the United States District Court for the District of Idaho:

- Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and § 846. Dkt. 1.

- Possession with Intent to Distribute Methamphetamine, Aid and Abet in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2. *Id*.

- Possession with Intent to Distribute Methamphetamine, Aid and Abet, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. §2. *Id.*

Moore was sentenced to three concurrent terms of 150 months in prison, a sentence that fell below the Guidelines range as determined by the Court. Dkt. 166 (Statement of Reasons). He has served approximately 40% of his sentence. Dkt. 190-1 at 2. Moore's home detention eligibility date is February 20, 2029, and his projected final release date is August 20, 2029. *Id*. at 1.

**LEGAL STANDARD**

The Court may not modify a defendant's sentence once imposed, except in limited circumstances. *Dillion v. United States,* 560 U.S. 817, 819 (2010).

Congress provided for a "compassionate release" exception in 18 U.S.C. § 3582(c)(1)(A).

To warrant release, the defendant bears the burden of bringing forward facts showing: (1) he exhausted administrative remedies available in the BOP, 18 U.S.C. § 3582(c)(1)(A); (2) his reasons for release are extraordinary and compelling, pursuant to the Sentencing Commission's policy statement, U.S.S.G. § 1B1.13(b); and (3) the factors in 18 U.S.C. §3553(a) weigh in favor of a sentence reduction.

The first requirement is exhaustion of BOP administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Exhaustion can be accomplished in any of the following ways:  (1) the Director of the BOP has filed the motion on the inmate's behalf, or (2) the inmate has requested that the BOP make such a motion and either (a) the inmate has 'fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the [inmate]'s behalf," or (b) 30 days have elapsed since the 'warden of the [inmate]'s facility' received a compassionate-release request from the inmate." *Keller*, 2 F.4th at 1281 (quoting 18 U.S.C. § 3582(c)(1)(A)).

The second requirement is that the defendant bears the burden of showing that "extraordinary and compelling reasons warrant such a reduction" under U.S.S.G. § 1B1.13(b). The defendant may qualify for one or a combination of any of the following reasons: The defendant is suffering from a serious, non-curable

MEMORANDUM DECISION AND ORDER - 3

physical or medical condition that substantially diminishes his ability to provide

self-care within the environment of a correctional facility, *or* the defendant is

suffering from a medical condition that requires long-term or specialized medical

care that is not being provided and without which the defendant is at risk of serious

deterioration in health or death, *or* the defendant's parent is incapacitated and the

defendant is the only available caregiver for the parent. *See* U.S.S.G. §

1B1.13(b)(1).

Third, the consideration factors of 18 U.S.C. §3553(a) include:

> (1) the nature and circumstances of the offense and
> the history and characteristics of the defendant;
> [and] (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to
> promote respect for the law, and to provide just
> punishment for the offense; (B) to afford
> adequate deterrence to criminal conduct; (C) to
> protect the public from further crimes of the
> defendant; and (D) to provide the defendant
> with needed educational or vocational training,
> medical care, or other correctional treatment in
> the most effective manner.

## ANALYSIS

### 1.  Exhaustion Requirement

Exhaustion of BOP administrative remedies is required under 3582(c)(1)(A),

but non-exhaustion does not deprive the Court of subject-matter jurisdiction.

*United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021). This section has been

MEMORANDUM DECISION AND ORDER - 4

deemed an administrative exhaustion requirement that imposes a mandatory claim-processing rule that must be enforced *when properly invoked*. *Id*. at 1283. Under this interpretation, a Court may waive the exhaustion requirement if the United States does not raise failure to exhaust as a defense, but the Court generally may not excuse a defendant's failure to satisfy that requirement over the government's timely objection. *Id*.

Where the Court does consider waiver of the exhaustion requirement, it should consider, in the "context of the prudential exhaustion of administrative remedies, the issue of whether 'relaxation of the requirement would encourage the deliberate bypass of the administrative scheme.'" *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990)). In rare instances, the Court can excuse non-exhaustion on futility grounds. *See, e.g.*, *Ramos v. Warden, F.C.I. Mendota*, No. 1:23-CV-00922-SAB-HC, 2024 WL 3011327, at *4 (E.D. Cal. June 11, 2024), *report and recommendation adopted,* No. 1:23-CV-0922 JLT SAB (HC), 2024 WL 3718220 (E.D. Cal. Aug. 8, 2024) (futility found where respondent determined that petitioner was jurisdictionally and statutorily barred from FSA ETC sentence-offsets due to a final order of removal).

Moore admits he has not exhausted his administrative remedies. Dkt. 186 at 1. He argues that he "cannot exhaust his formal administrative remedies under

MEMORANDUM DECISION AND ORDER - 5

BOP policy, as it would be futile given the urgency of the circumstances." *Id*. at 1-2. In other words, he asserts that his mother's condition is so dire, he must be released immediately, and he could not wait 30 days for a response from the BOP warden.

Moore's futility argument is rejected. The Court concludes that Moore did not properly exhausted his administrative remedies. The United States objects to waiver of that requirement. Although the request for compassionate release is subject to dismissal on this ground alone, the Court will review the remaining consideration factors.

### 2. Family Member's Incapacitation

Moore's main reason for requesting release is that his mother has serious health conditions, that she needs a caretaker not covered by Medicare or Medicaid, and that Moore is the only potential caretaker. Moore's mother has a prosthetic right eye; she has worsening vision in her left eye; she has been diagnosed with early stage memory loss and dementia; she struggles with depression; she is morbidly obese and has migraines, sleep apnea, and primary hypertension. Dkt. 186 at 2.

In support of his motion, Defendant attached medical records for his mother, dated January 18, 2022, March 9, 2023, March 25, 2024. At a wellness visit last year, his mother indicated that her dementia symptoms were not worsening, but

reported progressively worse vision in her left eye. Dkt. 186-1 at 13. Her right eye was removed nearly 30 years ago. *Id*. at 14.  Her living situation is noted as "independent," and she does not live alone. *Id*. at 9. Her blood pressure was "good without meds." *Id*. at 12. She was "overall doing well" as to her depression without her usual medication. *Id*. at 12-13. Her migraine headaches were adequately controlled with prescribed medication. *Id*. at 14.

Moore summarizes his mother's health condition as being "in constant decline, as evidenced by her medical records. While she is currently function[ing], that doesn't mean that the status quo will remain constant, nor that she is thriving in her current environment." Dkt. 191 at 1-2. Attempting to be proactive in preventing his mother's decline is a commendable goal, but the statute does not provide for release in such circumstances—to aid a family member from deteriorating *into* a condition that would qualify for a defendant caretaker to be released from prison. The medical records show that Moore's mother does not live alone. Moore has not disclosed the other residents of her household, but he can communicate the need to implement preventative measures to his mother's housemates. Nothing in the records shows his mother is currently *incapacitated*, which is the standard of law.

Moore also has failed to show that he is the only available caretaker for his mother. Moore's original Presentence Report (PSR) indicates that his sister is a

physical therapist. Dkt. 157. The PSR notes that Moore's mother was in poor health at the time of his sentencing and that, although she stated she needed Moore's help because of her visual impairments, she also received help from her daughter and grandson. *Id*. Moore now states that his sister is not capable of providing adequate care for his mother, but he does not support that statement with any evidence or explanation. Moore's mother's letter received at sentencing indicates that her left eye issue could be resolved with a cornea transplant, which would address one of the main reasons she would like help from Moore. Dkt. 157-2 at 2. Moore argues that his mother is unable to find transportation to her medical appointments; however, the medical records show she has attended medical appointments while Moore is imprisoned.

For all of these reasons, Moore has not shown that his mother is incapacitated and that he is the only available caretaker.

### 3.  Section 3553(a) Factors Applied to Moore

Compassionate release is appropriate when Section 3553(a) factors (1) and (2)(A) through (D) weigh in favor of release. The Court now analyzes Moore's facts in light of these factors.

Factor (1) is "the nature and circumstances of the offense and the history and characteristics of the defendant." § 3553(a). Moore's offense is serious. To disguise his trafficking trips, he would invite two females to ride to and from Arizona with

him and his co-defendant, so that it would appear the two "couples" were on vacation. Dkt. 157 at 7. During this trip, Moore was in possession of a firearm. Moore did not tell the women the real purpose of the trip. He took little thought for the safety of his passengers while engaging in dangerous drug trafficking activity.

Beyond the drug activity for which he is in federal prison, Moore was also charged with trafficking in heroin in Bannock County, Idaho, during approximately the same time period; those charges were dismissed in favor of federal prosecution. *Id*. at 8. Thus, Moore's operation was not limited to methamphetamine.

Moore lived his with mother during pretrial release. In that living arrangement, he "performed poorly, engaged in the use of methamphetamine on multiple occasions, and possessed a 'Whizzinator' to thwart drug testing efforts." Dkt. 157 at 15. At that time, it was "recommended the defendant obtain an alternative 'safe-and-sober. housing arrangement upon his release from custody," in other words, that he should *not* live with his mother again. *Id*. at 15.

Factor 2(A) is the need for the sentence imposed—to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Moore has served less than half of his sentence. Because of the alarming nature of the facts, especially his pretrial confinement use of illegal drugs and attempts to hide his use, the Court concludes that less than half a sentence does meet Factor 2(A).

MEMORANDUM DECISION AND ORDER - 9

Factor 2(B) is the need for the sentence imposed to afford adequate deterrence to criminal conduct. Because Moore was engaged in the trafficking of a large amount of drugs, took no care for the safety of the women he used for "cover" on his trafficking trips or for the persons who were addicted to the harmful illegal substances he sold them, and did not respect his mother's household by his continued use of drugs during pretrial release, the Court concludes that reducing his sentence at this point under these circumstances would not sufficiently deter him from committing further crimes or deter others from engaging in similar criminal activity.

Factor 2(C) is the need for the sentence imposed to protect the public from further crimes of the defendant. The investigation revealed Moore and his co-defendant were members of a multi-pound methamphetamine drug trafficking organization operating in the Idaho Falls and Pocatello, Idaho.  Dkt. 157 at 6. When he was caught with over four pounds of methamphetamine in his car, he claimed that it was only for his personal use. Dkt. 157. He used innocent member of the public to help hide the nature of his trafficking trips. Moore's disregard for the law in the transportation and sale of large quantities of drugs for use by Idaho citizens—to the detriment of the health and welfare of the addicted buyers and their families—does not weigh in favor of release.

MEMORANDUM DECISION AND ORDER - 10

Factor 2(D) is the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Moore has received significant rehabilitative services while in prison. Dkt. 186 at 4. Moore has graduated from the BOP's Non Resident Drug Abuse Program and Drug Education course Dkt. 191 at 3. He is a worker in the FPC Duluth's dog training program, training service dogs for people with disabilities. *Id*. He has accrued no incidents reports while incarcerated. These factors weigh in favor of release, but are not enough to outweigh all other considerations, including non-exhaustion, lack of a showing of incapacity, and lack of a showing of no alternative available caretaker. And, there is no evidence in the record to show that Moore would continue to receive the rehabilitative programs and education offered him in prison or that he would receive significantly better treatment for his own conditions outside prison.

Moore also asks the Court to consider that he now lives at a minimum risk Federal Prison Camp, with no high fences and little movement restrictions. He argues that his good behavior in this facility shows that he is not a risk to the public. However "low-security" his current housing may be does little to show how he will act once he returns to freedom. His various deceptions—from claiming four pounds of methamphetamine was for his person use, inviting unsuspecting guests on drug trafficking trips disguised as vacations, and from his attempted use of a

MEMORANDUM DECISION AND ORDER - 11

"Whizzinator" to hide his continued drug use—show that much rehabilitation is needed. The Court concludes that Moore remains a risk to the public at large. Overall, the § 3553(a) factors do not weigh in favor of release.

### 4.  Moore's Own Medical Conditions

Moore has asserted he has some type of medical conditions that should be weighed into the balance as evidence that he is less likely to commit another crime. Dkt. 186 at 1. He has provided little about his own medical conditions. This cannot really be weighed without supporting facts.

If considered under U.S.S.G. § 1B1.13, the record does not show Moore cannot receive adequate medical care for his conditions at the BOP. If considered as a factor under § 3553(a), Moore has not shown that having his own serious medical conditions would not weigh *against him* being able to function as an adequate caretaker for his mother.

### 5.  Summary and Conclusion

Moore admits he did not exhaust his administrative remedies. There is no factual basis for his futility argument, given that his mother is not incapacitated and does not live alone. Failure to exhaust, in the face of a Government objection, requires the Court to deny the Motion.

MEMORANDUM DECISION AND ORDER - 12

Even disregarding the failure to exhaust, the Court concludes it would not be appropriate under 18 U.S.C. § 3582(C)(1)(A) or U.S.S.G § 1B1.13 to reduce Moore's sentence, given the serious nature of the crime and the fact that he has completed less than half of his sentence. Moore has not brought forward sufficient evidence showing that his mother requires more care than she is currently receiving, or that his sister, nephew, or other housemate cannot assist Moore's mother with daily living or heath care needs. Eye surgery also appears to be an option for his mother. For these reasons, the Motion will be denied.

## ORDER

**IT IS ORDERED:**

1. Defendant Moore's Motion for Appointment of Counsel (Dkt. 189) is DENIED.

2. The Motion for Compassionate Release (Dkt. 186) is DENIED.



DATED: May 2, 2025

B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 13

MEMORANDUM DECISION AND ORDER - 14